UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Vera Middleton, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:21-cv-1071-BHH |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Town of Moncks Corner, Moncks ) | |
| Corner Police Department, Lee Zakis, ) | |
| individually, and Sean Baber, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court upon Plaintiff Vera Middleton's ("Plaintiff") complaint, alleging various causes of action arising under state law, as well as federal claims pursuant to 42 U.S.C. § 1983 for violation of her civil rights. (ECF No. 1-1.) Plaintiff initially filed her complaint in state court, but on April 13, 2021, Defendants removed the action to this Court. (ECF No. 1.) On May 5, 2021, Plaintiff entered a stipulation of dismissal with prejudice as to Defendant Town of Moncks Corner Police Department, and on May 31, 2022, Defendants Town of Moncks Corner ("Moncks Corner"), Lee Zakis ("Zakis"), and Sean Baber ("Baber") (collectively, "Defendants") filed a motion for summary judgment. (*See* ECF Nos. 10 and 31.) On June 14, 2022, Plaintiff filed a response to Defendants' motion, and Defendants filed a reply on October 6, 2022.[1] (ECF Nos. 33 and 36.)

---

[1] Plaintiff's complaint seeks monetary damages and includes the following causes of action: (1) negligence as to all Defendants; (2) negligent training, hiring, supervision, and retention as to Town of Moncks Corner; (3) invasion of privacy as to all Defendants; (4) trespass as to all Defendants; (5) false imprisonment as to all Defendants; (6) battery as to all Defendants; (7) assault as to all Defendants; (8) a claim pursuant to 42 U.S.C. § 1983 for unlawful seizure against Zakis and Baber; (9) a claim pursuant to 42 U.S.C. § 1983 for unlawful search against Zakis and Baber; and (10) a claim pursuant to 42 U.S.C. § 1983 for excessive force against Zakis and Baber. As previously mentioned, Plaintiff filed a stipulation of dismissal as to Defendant Town of Moncks Corner Police Department. Also, Plaintiff concedes in her response to Defendants' motion for summary judgment that "her claims against Baber should be dismissed." (ECF No. 33 at 3.)

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to a United States Magistrate Judge for preliminary determinations. On November 7, 2022, Magistrate Judge Molly H. Cherry issued a report and recommendation ("Report") outlining the issues and recommending that the Court grant Defendants' motion for summary judgment as to all claims against Defendant Baber and all federal claims against Defendant Zakis, such that only state law claims against Defendants Zakis and Town of Moncks Corner remain. The Magistrate Judge's Report further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and remand the action to state court.

Attached to the Magistrate Judge's Report was a notice advising the parties of the right to file written objections to the Magistrate Judge's Report within fourteen days of receiving a copy, and on November 21, 2022, Plaintiff filed her objections to the Report. (ECF No. 39.) For the reasons set forth below, the Court overrules Plaintiff's objections and adopts in full the Magistrate Judge's Report.

## **STANDARDS OF REVIEW**

**I.     Summary Judgment**

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 24 (4th Cir. 1990).

## II.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

As an initial matter, the Magistrate Judge's Report thoroughly outlines the relevant facts as established by the evidence before the Court, which includes excerpts of Plaintiff's deposition transcripts provided by the parties; affidavits from Mariah Tolbert, Defendant Baber, and Defendant Zakis; body worn camera footage; and a use of force report. (*See* ECF No. 37 at 2-9.) In her objections, however, Plaintiff first objects to the Magistrate Judge's version of the facts as it relates to Defendant Zakis' approach to Plaintiff and her

home. (ECF No. 39 at 1.) According to Plaintiff, the Magistrate Judge failed to properly characterize the video evidence, which shows that Zakis was able to speak clearly to Plaintiff through the storm door and that Zakis yanked Plaintiff's door open and out of her hand. (*Id.*) Plaintiff further asserts that the body camera footage contradicts Zakis' statement in his affidavit that Plaintiff tried to lock the door, and Plaintiff contends that the footage contradicts Baber's statement in his affidavit that he repeatedly tried to present the Ex Parte Order from the Family Court[2] ("Ex Parte Order") to Plaintiff.

After *de novo* review of the evidence of record, including the body camera footage at issue, the Court finds Plaintiff's objection unavailing and finds no error in the Magistrate Judge's characterization of the evidence. First, whether Zakis could speak clearly through the door and/or yanked open the door has no affect on the Court's ultimate analysis of the legal issues. Next, the Court does not find that the body camera footage clearly contradicts Zakis' statement that Plaintiff was attempting to lock the door when he pulled it open; and regardless, Plaintiff herself alleges in her complaint that when Zakis approached the door, "she attempted to lock her door in an effort to protect herself and her grandson." (ECF No.

---

[2] As outlined by the Magistrate Judge, the Ex Parte Order granted emergency protective custody of the minor children involved in this case to South Carolina Department of Social Services ("SCDSS") and provided, in pertinent part:

> 2. If requested by SCDSS, SCDSS shall be accompanied by a duly authorized law enforcement officer when it attempts to take the children into custody. It shall be the duty of the accompanying law enforcement officer to remove physically the children from the premises where the children [ ] are found. Law enforcement is authorized to enter *any premises* where the children are *suspected* to be located and is authorized to take possession of the children *by whatever means necessary to execute the Order*. Law enforcement is authorized to take this action *without the consent of and above the objection of the owner of the premises*, legal custodian, legal guardian, and/or the person responsible for the children.

(ECF No. 31-2 at 3 (emphasis added).)

1-1 at 4.)  Lastly, the Court finds no merit to Plaintiff's assertion that the video "clearly shows Baber not trying to present Ms. Middleton with any papers." (ECF No. 39 at 2.)  In all, the Court finds that the Magistrate Judge clearly and properly summarized the evidence, and the Court therefore overrules Plaintiff's first objection.[3]

Next, Plaintiff objects to the Magistrate Judge's recommendation that her federal claims against Zakis be dismissed.  Specifically, Plaintiff asserts that "[t]here was not, and Defendant Zakis did not believe, there was an exigent circumstance to justify an unlawful search." (ECF No. 39 at 2.)  Plaintiff further asserts that Zakis did not believe that he saw the two-year-old children in Plaintiff's home and that Zakis did not have any reason to cross the threshold of Plaintiff's home.  (*Id.*)

After *de novo* review, the Court finds no merit to Plaintiff's argument.  Stated simply, the existence of exigent circumstances is an exception to the warrant requirement and is only necessary to establish the validity of a child removal that occurs in the absence of a valid court order.  *See Gedrich v. Fairfax Cnty. Dep't of Fam. Servs.*, 282 F. Supp. 2d 439, 469 (E.D. Va. 2003) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000) (explaining that, "[i]n the context of removing a child from her home and family, a seizure is reasonable if (1) *it is pursuant to a court order*; (2) it is supported by probable cause; *or* (3) it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'") (emphasis added).)  Here, there is no

---

[3] Plaintiff also objects that the Magistrate Judge "makes a reference to DSS policies" that are not in evidence.  (ECF No. 39 at 2.)  This objection appears to be in response to the Magistrate Judge's statement that Ms. Tolbert enlisted the assistance of Moncks Corner Police Department "in accordance with SCDSS's policies and *pursuant to the authority given in the Order*." (ECF No. 39 at 2 (emphasis added).)  As is clear from the second half of the Magistrate Judge's sentence, however, the Magistrate Judge was not relying on any specific policy language not in evidence but was simply explaining that DSS had authority to ask for the assistance of Moncks Corner Police Department.

5

search warrant at issue because, as the Magistrate Judge properly explained, Defendant Zakis' authority to conduct a search arose from the Ex Parte Order of the Family Court (a relevant portion of which is outlined in footnote 2 of this order).  (*See* ECF No. 31-2 at 3.)  Importantly, Plaintiff does not argue that the Ex Parte Order carries different authority from a search warrant, nor does she call into question the validity of the Ex Parte Order.  Therefore, the Court agrees with the Magistrate Judge that Defendant Zakis was acting under the authority of a valid court order, which allowed him to enter Plaintiff's property to search for the children.  *See also Wildauer v. Frederick Cnty.*, 993 F.2d 369, 372 (4th Cir. 1993) (holding that a social worker and deputy who entered a home to retrieve children did not act unreasonably and were protected by qualified immunity for their entry).

Furthermore, the Court notes that *even if* exigent circumstances were necessary to establish the validity of Defendant Zakis' search, such circumstances did exist insofar as the Family Court, in issuing the Ex Parte Order, specifically noted, *inter alia*, that probable cause existed to believe that "by reason of abuse or neglect, there exists imminent and substantial danger to the children's life, health, or physical safety."  (ECF No. 31-2 at 2.)  Ultimately, therefore, the Court finds Plaintiff's objection wholly without merit.

Next, Plaintiff objects that Zakis' seizure of her was unreasonable.  Here again, however, the Court finds no merit to Plaintiff's argument.  First, the law is well established that police officers executing a search warrant are allowed to detain occupants of a premises while the search is being conducted.  *See Michigan v. Summers*, 452 U.S. 692 701-05 (1981).  Furthermore, the law is well established that officers who develop probable cause to arrest while executing a valid search warrant may immediately arrest a suspect.  As stated above, although officers were not acting pursuant to a search warrant, they were

acting pursuant to a valid court order, such that *Summers* and its progeny would apply. Furthermore, although the Fourth Circuit has not "articulated the legal standard that applies to Fourth Amendment unlawful seizure claims in the child removal context," *Susan Virginia Parker v. Henry & William Evans Home for Child., Inc.*, 762 F. App'x 147, 154 (4th Cir. 2019), the court has established that "investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context." *Wildauer*, 993 F.2d at 372. Ultimately, the Court agrees with the Magistrate Judge's analysis on this issue and finds no Fourth Amendment violation; stated plainly, Defendants were entitled to detain Plaintiff during the search as she was an occupant of the house where the missing children were believed to be. *See Muehler v. Mena*, 544 U.S. 93, 98 (2005) (holding that the detention of an individual who was not suspected of a crime for the duration of the search was reasonable under *Summers*, as a warrant existed to search the premises and the individual was an occupant of that address when the search was executed) (*see also* ECF 31-2 at 3.)

Furthermore, the Court agrees with the Magistrate Judge that it became necessary to detain Plaintiff during Zakis' execution of the Ex Parte Order to ensure a safe and efficient search, as the evidence clearly indicates that Plaintiff became irate and uncooperative almost immediately after officers approached her. Thus, Plaintiff's detention pending the completion of the search was reasonable under *Summers*, and Plaintiff's unwillingness to cooperate with officers made her detention necessary under the circumstances. In summary, the Court finds Plaintiff's objection unavailing because neither the search nor the seizure conducted pursuant to the valid Ex Parte Order violated Plaintiff's Fourth Amendment rights.

Plaintiff also objects that Zakis used excessive force against her, and she asserts that the Magistrate Judge failed to consider the opinion of Plaintiff's expert, Dr. Geoffrey Alpert, who opined that Zakis' use of force was contrary to accepted police practices. (ECF No. 39 at 3.)

As the Magistrate Judge explained in her Report, the Fourth Amendment prohibits unreasonable seizures and includes the right to be free of "seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). In *Graham v. Connor*, the Supreme Court set forth three factors to generally inform a court's inquiry as to whether an officer used excessive force: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether she is actively resisting arrest or attempting to evade arrest. 490 U.S. 386, 396 (1989).

Here, the Magistrate Judge recognized that the first *Graham* factor initially cut in favor of Plaintiff but no longer did once she became uncooperative and disruptive.[4] As to the second factor, the Magistrate Judge explained that the video evidence shows that Plaintiff presented an immediate threat to the safety of Defendants and bystanders, such that the use of some physical force was reasonable to effectuate her detention. (*See* ECF No. 31-1 at 3.) Third, the Magistrate Judge concluded that the evidence showed that Plaintiff was actively resisting Defendants' attempts to detain her. Accordingly, the Magistrate Judge found that Zakis' use of force was not excessive based on the totality of the circumstances.

---

[4] Indeed, as the Magistrate Judge noted, although Plaintiff was not accused of committing a crime initially, testimony from Zakis indicates that Plaintiff ultimately was charged with three offenses, including disorderly conduct and two counts of assault. (ECF No. 31 at 5.)

After *de novo* review, the Court wholly agrees with the Magistrate Judge's analysis on this issue and finds that Plaintiff's expert's opinion does not alter the analysis in light of the clear evidence of record. In other words, the Court agrees with the Magistrate Judge that the evidence of record, which includes Plaintiff's expert's opinion, simply does not create a genuine issue of material fact as to the reasonableness of Zakis' use of force under the circumstances.

As a final objection, Plaintiff reiterates her argument that Zakis is not entitled to qualified immunity. According to Plaintiff, any offense she committed was minor, and she contends that she posed no threat to Defendants or the public. Plaintiff states: "[w]hen all of the factors are viewed together, it is clear that the Plaintiff suffered serious injuries over a minor offense." (ECF No. 39 at 4.)

The Court has reviewed the record *de novo* and finds no merit to Plaintiff's arguments. First, as outlined above, the Court disagrees with Plaintiff that the *Graham* factors weigh in her favor. Second, for the reasons set forth above and in the Report, the Court finds that Plaintiff's allegations, even accepted as true, do not establish a clear constitutional violation. Furthermore, the Court notes that even if Plaintiff could establish that Zakis violated her constitutional rights, he still would be entitled to qualified immunity because his conduct in entering Plaintiff's home and detaining her in the course of executing the valid Ex Parte Order did not violate any clearly established rights of which a reasonable person would have known. *See Rogers v. Cumberland Cnty. Dep't of Soc. Servs.*, No. 5:20-cv-477-BO, 2022 WL 1132153, at *12 (E.D.N.C. Feb. 1, 2022) ("Furthermore, even assuming there was no valid court order, qualified immunity protects Phillips's actions in involving law enforcement to search Bruton's home in an attempt to

9

remove the minors, after Bruton refused to turn them over, as well as the ultimate removal of the minors."), *report and recommendation adopted*, No. 5:20-cv-477-BO, 2022 WL 851730 (E.D.N.C. March 22, 2022); *see also Ross v. Klesius*, 715 F. App'x 224, 226 (4th Cir. 2017) (finding that Defendants were entitled to qualified immunity where they entered a home to remove children in response to allegations of child neglect). Accordingly, the Court agrees with the Magistrate Judge that Zakis is entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the Court overrules Plaintiff's objections (ECF No. 39); adopts and incorporates the Magistrate Judge's Report (ECF No. 37); and the Court grants Defendants' motion for summary judgment (ECF No. 31) as to all claims against Defendant Baber and all federal claims against Defendant Zakis, such that the only claims remaining are state law claims against Defendants Zakis and Town of Moncks Corner Remain. As to those state law claims, the Court also declines to exercise supplemental jurisdiction and instead remands the matter to the state court where Plaintiff originally filed this action.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 24, 2023
Charleston, South Carolina

10